Argument of this morning, case number 6, United States v. Picardi, number 19-1043. Is it Mr. Van Zandt? Yes, Your Honor. May it please the Court. This is a fairly straightforward case, Your Honor. We've got essentially two issues. I think I'd like to address the question of whether or not this issue was properly preserved first, since I think the government focuses the most on it. In the sentencing transcript, which is attached to the record, Judge Durkin has an extensive discussion about the 3553A factors in relation to incarceration. However, that occurred after the whole issue of the fine had come up. And the issue of the fine only came up in the context, in passing, of the supervised release conditions, which Judge Durkin was simply reading off. Are you sure that's fair, though? And the reason why is because early on in the transcript, pages 4 and 5, right as things are getting going, the Court asks Mr. Steinbeck, have you discussed the recommendation of probation with your client? And then asks the defendant, Mr. Picardi, have you read and discussed the probation officer's recommendation? Now, that recommendation, as I understand it, was for the fine, for the fine amount that was imposed, correct? That was part of the recommendation, Your Honor. Part of it, right. So nobody was surprised, heading into sentencing, that probation was recommending a $100,000 fine. Pardon me? That's fair to say, based on the record, Your Honor. The question is whether or not Mr. Steinbeck was required to specifically object to that recommendation as part of his argument or at some point during sentencing. What I think was particularly interesting about the way that the sentencing hearing proceeded was the fine itself was imposed well before the 3553A factors were discussed, well before the sentence was actually imposed. And because it only came about in context, it was only after that that there was any opportunity to object whatsoever. The case law that is cited in the brief specifically talks about this. In situations where the Court simply pronounces the sentence and doesn't give the defense an opportunity to object to what's just been pronounced. At the very end of the sentence, on page 76 of the transcript, the Court says, Mr. Steinbeck, is there anything else I need to address? That was a perfect opportunity to say, Judge, you've got to be kidding me. A $100,000 fine, where in the world is that coming from? Well, that is certainly an opportunity, Your Honor. You know, the custodial sentence had already been announced. At that point, everything had already been announced, Your Honor. Right, so I don't, it's, it's really hard for me to not see this as actually waiver. Well, I think the waiver issue, I think, is a little bit easier to deal with than torture, Your Honor. Waiver, as the Court knows, is something that has to be explicit. It's knowing and voluntary. So, there is an interesting version of waiver here, but it's not as to the fine. If, noting in the transcript before the discussion on the supervised release conditions, Judge Durkin specifically asked Mr. Steinbeck, do you have any objections to the supervised release conditions? Mr. Steinbeck said no, no objections to those. That, certainly, I would say is a waiver as to the supervised release. Well, is there an objection to the fine? Well, the fine is not part of the supervised release conditions. No, no, no, I understand that, but there's, there's not a peep in the sentencing transcript about a $100,000 fine. You've got to be kidding me. Well, and that's, I think, largely the point here. So, what are, what are we supposed, how are we supposed to review that? And that, that exactly is my point, Your Honor. This is a situation where Judge Durkin's findings did not encompass anything regarding the fine. All he did was announce it and say the defendant has the ability to pay that in a section of the transcript that has to deal with supervised release conditions. That's a separate issue, though, than the waiver issue. It sounds like you're running into a procedural error. Back to the waiver point. As Judge Scudder pointed out, your client received the PSR at least a year in advance. The PSR had the recommendation for the $100,000 fine, which is what Judge Durkin ultimately imposed. Mr. Steinbeck is a very seasoned defense lawyer who certainly knows what he's doing. There was no written objection filed to the $100,000 fine in advance of sentencing, and the parties were given the opportunity to object. And at sentencing, when Judge Durkin asked if there was any objection to the PSR, there was no objection to the fine at that point. And then again, at the end of sentencing, when the opportunity was given again to object, there was no objection. In addition to that, let me add the other factor because this goes to the waiver versus forfeiture issue. Mr. Steinbeck specifically said to the judge when talking about punishment, he was trying to keep his client out of jail, understandably, and that's what he was arguing for. And he said there are other ways to punish an individual. And he goes on to say one way is, I'm paraphrasing a bit, a fine. This is a crime of taking someone else's money. Then a response in addition to the custody that he has already served is one that has been recommended by the probation department, which is a fine. Why isn't that a strategic decision on Mr. Steinbeck's part to try to save his client from going to jail and have a higher fine imposed? I think three answers to the question, Your Honor. I'll start with your last one. And it was a long question. I'm sorry. And probably multiple ones in there. I think the key issue with that is when Mr. Steinbeck said that, that was prior to the announcement of the $100,000 fine. Notably, the guidelines calculations, which had just been discussed heavily, the top fine was $40,000. Which was higher than what the top fine was in the PSR. Correct. So he was already on notice that a fine was recommended above the guideline. Absolutely. And I think that's a fair point. But my point is that there's a very big difference between arguing that, yes, you should impose some sort of fine, consenting to a fine, as opposed to consenting to a $100,000 fine, which was not within the guidelines. It was, in fact, two and a half times what the guidelines was. So to any extent that there's a waiver of forfeiture there, it's to whether or not a fine should be imposed. It's not a question of the amount. But once he heard the fine, why not object? Well, at that point, it had already been pronounced, Your Honor. Well, of course. That happens all the time. Certainly. And the case law is fairly clear that in situations where there is no opportunity to object before the imposition, that that does not qualify as waiver of forfeiture. But how can you say no opportunity to object here when that precise fine is what was in the PSR? And there were no written objections to it and a representation to the court that there were no objections to the PSR when the court asked about it. I would be much more sympathetic to you if that $100,000 fine had not been in the PSR and he wasn't on notice that that was the recommendation from the probation department. I'm actually glad you brought that up, Your Honor. An important distinction here is that the $100,000 recommendation was not in the PSR itself. It was in the recommended portion. Exactly. And I was not trial counsel, obviously. When this came up on appeal, we did not have that recommendation in the record, and it actually took us quite a bit of time to find out where that $100,000 came from. So to the extent that we're saying there were no PSR objections and linking the $100,000 to the PSR, I think that's not quite accurate based on what was in front of the court. Are you saying that Mr. Steinbeck did not get the probation officer's recommendation in advance of sentencing? I don't know one way or the other, Your Honor, so I definitely can't speak to that. Well, hold on. It's in the transcript. I know he says the recommendation, Your Honor. I don't know whether he actually received the paper. Have you discussed the recommendation of probation? Right. I mean, presumably they had a discussion about its content. That's my assumption, Your Honor. I just don't know one way or the other whether he actually received the paper copy along with the PSR. That's what I'm saying. Wasn't that something in the record prior to the sentencing where it was requested? Maybe at the change of plea? I don't know offhand, Your Honor. But the larger point there is that when Judge Durkan asks, are there any objections to the PSR, is that a time when we would expect someone to object to the probation officer's recommendations for the sentence itself? Generally, when that's asked, and particularly in this situation, that was in the context of supervised release, the facts that were contained in the PSR. So does that question then create a forfeiture situation? Now, waiver aside, I see I'm going to my rebuttal time. If I could yield to the government. I think Judge Roker may have a question for you. Oh, I'm sorry, Your Honor. Does Mr. McCarty understand that if we vacate the sentence and remand for resentencing, the term of imprisonment is also subject to adjustment? You know, we generally treat sentences as a package. And one could view what occurred, one could, as defense counsel himself asking Judge Durkan to consider imposing a higher fine in lieu of additional incarceration. So that could and could, in quotes, give the session that if the fine goes down, the sentence may go up. I just want to make sure that Mr. McCarty understands that there is a risk here. I can definitely assure the Court I did specifically discuss that when I first met with Mr. McCarty. So that is discussed. I do know, however, the situation here, and what's always bothered me about this case, is the sentence of incarceration itself was low end of the guidelines of 8 months versus 6 to 12 months. The fine was so far outside of the guidelines that it is almost impossible to justify without knowing why that specific number was picked, other than out of thin air because probation recommended it. And that's been the most difficult part here because Judge Durkan was so careful with everything else in this hearing. Why go so far outside of the guidelines to impose this wild fine that's not justified by anything in the record, particularly in reference to Section 3572? And with that, I'll yield to the government. Okay, thank you very much. Sponamici. May it please the Court, good afternoon again. Let me just begin by clarifying the record with respect to the sentencing recommendation. I have in my possession a letter dated November 6, 2017, from the Probation Office to Defense Counsel, Mr. Steinbach, in which the recommendation is attached, or to which the recommendation is attached. The sentencing hearing occurred late in the year of 2018, so the defendant was on notice of it for a substantial period before the sentencing. I understand that there was some confusion about the record, but this clarifies it for me, and I think it is clear, even based on the transcript, that everybody was talking about a recommendation by the Probation Officer, and that was the recommendation they were discussing. You know, Ms. Sponamici, the fine here, it seems to me, contradicts every statement by everyone in the record regarding whether this case warrants a sentence outside of the guidelines. The sentencing recommendation, the very document that advises the Court to set a $100,000 fine, also says, and I'm quoting, a sentence at the high end of the advisory guideline range appears to be appropriate and necessary. The PSR says that the Probation Officer has not identified any factors that would warrant a departure from the applicable sentencing guidelines range, and at pages 29 and 30, the District Court says of the sentencing transcript that no departure outside the guidelines is appropriate, and then, with no explanation other than, quote, he can afford to pay, end quote, the Court imposes a fine two and a half times the maximum guidelines fine. How should we ignore all of those contrary statements? Well, Your Honor, honestly, I think the best explanation for it, well, first of all, I guess, number one, let me just say that I would like to speak to your initial observation that there was no evidence in the record to support an above-guidelines sentence of any kind, whether it be sentence of the term of imprisonment or the fine. I'm not saying that. I'm quoting from these various sources. Well, that's right, but the judge specifically stressed at sentencing that the defendant committed the offense while acting as a law enforcement officer, not only just as a government employee but as a law enforcement officer, that he victimized an elderly visitor to the United States who did not speak English. I understand all of that, of course. And that he was callous and greedy and that he did not need to have committed the offense, that he tarnished the integrity of an important federal agency, and that his crime was exacerbated by his attempts to cover it up, which included potentially making the victim undergo a body search while he held her money in his pocket. Then it talked about, with respect to the characteristics and history of the defendant, the court noted his harassment of his wife and the good upbringing and just really lack of any reason to commit the crime. Look, all of that may be so, but the court specifically says at pages 29 to 30 of the sentencing that there is nothing here to justify a sentence outside the guidelines. But the court was— Look, he could—I mean, if we should remand, Judge Durkan could, you know, give the same sentence exactly, but he would have to explain more, it seems to me, than he can afford to pay. And that's— I'm sorry, I didn't mean to cut you off. I see what you're saying, Judge, but I really think it's unfair to just take that one statement out of context and not to view the record as a whole in which the district court explains in chapter and verse why this was a unique situation, why this was not a normal mere theft or embezzlement case, which it was absolutely not. And also take into account the fact that, you know, I understand that you earlier said that the defense counsel's comments could be taken to mean that he was requesting this result. We think that is the only—the most natural understanding of what Mr. Steinbeck actually said. And if there is a balancing consideration, he specifically goes to the idea of the levers that could be applied here between the term of imprisonment and the fine. Please strongly consider answering the question of what is sufficient with the response that the time is already served is enough and that there are other ways to punish this individual and then immediately directs the judge to consider punishing the individual with a fine. And not only any fine, but the fine recommended by probation. So I think what you have here is a situation where a defense lawyer very reasonably attempted to keep his client out of jail by suggesting that the court accept the probation officer's recommendation of a significant fine, you know, a fine above the guideline range, and the court accepted that assessment. And in support of that assessment, by the way, and in support of that request, Mr. Steinbeck specifically argued that the defendant could—it's not just that he could pay, that he's able to pay and that really, you know, he's been doing it all his life, but then contrasted that with his experience thus far in pretrial detention, where he had—which he described as the defendant dwindling away both emotionally and physically. This was a strong argument asking for the result the judge gave him. And that was a way—it was a strategic decision that constituted a waiver, and in addition, if that were not enough, the issue of the procedural error here was also waived not only by the defendant's failure to object to the recommendation prior to sentencing, during the sentencing hearing, but the defendant's answer to the judge's question, are there any arguments in mitigation that I have not addressed? And the defense counsel said, no, Your Honor, I believe you—I've got a quote here, but I believe you fully addressed everything. You know, when reading the record as a whole, it appears that everyone agreed that a within-guideline sentence was appropriate. And no one seems to acknowledge that the suggested fine here was substantially above the guidelines. I see counsel's argument for time served, along with the suggestion that time served can be balanced by a hefty fine, but I see no concession that a fine two and a half times the maximum would be appropriate. And I don't see anything that leads me to believe that counsel agreed to that heavy fine, even if the court imposed additional incarceration. It's the number. It's the number. It's the number, which was one and a half times, because the actual high end of the guideline was $40,000, just to be clear. That was true. Originally, the probation office did not recommend an enhancement for obstruction, but when that was added by the district court, that increased the guideline level. So it was greater, and the sentence was lower, and also probation recommended a sentence at the high end of the range. And what the defendant received was not a sentence at the high end of the range, but a greater fine. Ms. Bonamici, does the court have to accept a defendant's strategic decision in order for there to be waiver? Because what it seemed to me Mr. Steinbeck was doing here was saying, give him a hefty fine and order him to time served. I don't, reading the record, and I wasn't there, but reading the record, it seemed to me he was hoping that his client walked that day. I think he was surprised that he got a guideline sentence. He was hoping for something much less, which Judge Durkin didn't. And given Mr. Steinbeck's argument, essentially let him out, give him a shorter prison time. He's dwindling away in there. He's having emotional trouble in there with a large fine. That's not exactly what he got. He got a higher sentence than was asked for in the same fine. Does that matter for purposes of waiver? If a court does not fully adopt the strategic approach? No, I don't think it does matter. And particularly here where even though the court did not fully adopt it, it adopted that approach, the approach that was argued for. So to me, I don't think that this is a bargain being made between the defense counsel and the judge. The judge exercises his or her discretion, and has wide latitude to do so, to impose a sentence that the court deems appropriate. And an above-guideline fine or prison term was appropriate here, as the district court explained in discussing the 3553A factors. And I don't think that it matters specifically what order they're in. I don't think this court has held that the order is determinative. In fact, I think this court has held just the opposite, that the discussion of 3553A factors applies to the entire sentence, not to just one part of it. So in this case, where the court does explain why he considers the crime so egregious and imposes a sentence, even if we view this as a forfeiture rather than a waiver, there's still no plain error regardless. So the waiver doesn't need to happen in this case, but we think that this was a strategic decision that put the court on a path that now is being complained of. I'm sorry, Judge Rovner, I didn't mean to keep talking if you wanted to interrupt. No, no. I love hearing you talk, Ms. Bonner. Well, I heard some commotion, but then I was looking up at Judge St. Even, so I didn't notice whether you wanted to speak, and I should be quiet. Thank you so much. Okay. So if the court has no further questions, the government would request that the judgment in this case be affirmed. Okay, thank you. Mr. Manzant, do you have any parting thoughts for 30 seconds or so? Just two brief points I'd like to get on, Your Honor. Mr. Manzant, I love hearing you talk too. Well, thank you, Your Honor. So two brief points based on what the government said. The first is that Judge Zirkin did spend an inordinate amount of time talking about the 3553A factors, and that was extensive. The problem here is that the factors for fines are not the same. They're not necessarily judged under 3553A. They're judged under 3572. It's essentially the same, though, with, I think, two differences, right? Well, to an extent, Your Honor, and I was just looking back over the statute while the government was talking, and the four factors that they discussed that justified this fine, that it was callous and greedy, that he was a law enforcement officer, that there was a cover-up, and his history of harassing his wife, none of those are factors that are taken into consideration under 3572. Isn't nature and circumstances of the offense one of the factors considered? No. Actually, not based on what I'm seeing, Your Honor. It's income, burden of the fine, pecuniary loss inflicted on others, so I guess that could be part of it. In this case, it was $5,000. But the point is that they're substantially different. So if this was a situation where we're talking about supervised release, those are 3553A factors, so it would be a different story. The second very brief point I wanted to make is that when Mr. Steinbeck was talking about give him a fine and lesser prison term, I would have much more sympathy for the government's argument if he'd said, I know probation's recommending $100,000. Give him $100,000 and we'll walk today. But that's not what he said. He was talking about a fine. So if I was up here arguing there should be no fine whatsoever, I think that that would be a definite waiver. But that's not what we're here today to talk about. It's whether or not the $100,000 fine, which was so far outside the guidelines, was justified. And if there are no further questions from the courts, I would ask the court to reverse that aspect. Thanks. Thanks to both counsel. The case is submitted and the court will stand in recess.